UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

JULIUS L. HUTCHERSON,

                Petitioner,

        vs.

JOHN BURGE,[1] Superintendent, Auburn
Correctional Facility,

              Respondent.

No. 9:07-cv-00688-JKS

MEMORANDUM DECISION

Petitioner, Julius L. Hutcherson, a state prisoner appearing *pro se*, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254.  Hutcherson is currently in the custody of the New York Department of Correctional Services, incarcerated at the Auburn Correctional Facility. Respondent has answered, and Hutcherson has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

Following two separate jury trials, Hutcherson was convicted in the Broome County Court of Robbery in the First Degree (N.Y. Penal Law § 160.15(2)), and Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16(12)).  As a second felony offender, the Broome County Court sentenced Hutcherson to a determinate prison term of 25 years plus five years of supervised release on the first-degree robbery conviction, to be served consecutive to an indeterminate term of 12½ years to 25 years on the third-degree controlled

---

[1] John Burge, Superintendent, Auburn Correctional Facility, is substituted for Superintendent, Greenhaven Correctional Facility.  Fed. R. Civ. P. 25(d).

substance conviction.  Hutcherson timely appealed his convictions and sentences to the Appellate Division, Third Department, which affirmed his convictions and sentences, and the New York Court of Appeals denied leave to appeal on April 6, 2006.[2]

On May 27, 2007, Hutcherson, appearing *pro se*, filed a motion to vacate his conviction under N.Y. Criminal Procedure Law § 440.10 in the Broome County Court.  The Broome County Court denied his motion in an unpublished, reasoned decision,[3] and the Appellate Division, Third Department, denied leave to appeal on November 7, 2007.[4]  The next day, November 8, 2007, Hutcherson filed a second § 440.10 motion to vacate his conviction in the Broome County Court. On November 13, 2007,  Hutcherson filed a motion to set aside his sentence under N.Y. Criminal Procedure Law § 440.20 in the Broome County Court.  The Broome County Court consolidated the two motions and denied them in an unpublished, reasoned decision on January 3, 2008.[5]  The Appellate Division, Third Department, summarily denied leave to appeal on May 27, 2008.[6]  On January 24, 2008, while his second § 440.10 motion was pending, Hutcherson filed a petition for a writ of error *coram nobis* in the Appellate Division, Third Department.  The Appellate Division summarily denied Hutcherson's petition without opinion or citation to authority in an unpublished decision.[7]  The New York Court of Appeals denied leave to appeal on August 8,

---

[2] *People v. Hutcherson*, 808 N.Y.S.2d 813 (N.Y.A.D.), *lv. denied*, 849 N.E.2d 978 (N.Y. 2006) (Table).

[3] Docket No. 33-12.

[4] Docket No. 33-15.

[5] Docket No. 33-18.

[6] Docket No. 33-22.

[7] *People v. Hutcherson*, 2008 WL 897130 (N.Y.A.D., April 1, 2008).

2008.[8]  Hutcherson timely filed his petition in this Court on June 26, 2007, and his amended

petition on December 11, 2008.

## II.  GROUNDS RAISED/DEFENSES

In his amended petition, Hutcherson raises four grounds for relief:  (1) violation of his

*Miranda* rights;[9] (2) ineffective appellate counsel (failure to raise issues); (3) failure of the

prosecution to turn over materials in violation of *Brady*;[10] and (4) police misconduct (witness

tampering).[11]  Respondent asserts no affirmative defenses in his Answer.[12]

This Court notes that Hutcherson refers to seven grounds in his traverse:  (1) failure to

prove each element of the crime; (2) and (3) two separate claims of ineffective trial counsel; (4)

ineffective appellate counsel; (5) confrontational clause violation; (6) a *Miranda* violation; and

(7) denial of the right to present evidence that another had committed the crime.  It appears that

Hutcherson raised grounds (1), (2), and (3) in his original petition, but did not include them in his

amended petition.  In compliance with the terms of this Court's Order,[13] Respondent has not

responded to any ground other than those raised in the amended petition.

---

[8] *People v. Hutcherson*, 894 N.E.2d 660 (N.Y. 2008) (Table).

[9] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[10] *Brady v. Maryland*, 373 U.S. 83 (1963).

[11] These issues all appear to arise out of the first trial on the first-degree robbery charge.

[12] *See* Rules—Section 2254 Cases, Rule 5(b).

[13] Docket No. 22, p. 2 (ordering the amended petition be served on Respondent and Respondent to answer the amended petition).

"The petition must: (1) specify *all* the grounds for relief available to the petitioner; (2) state the facts supporting each ground; [and] (3) state the relief requested . . . ."[14]  As the Supreme Court has stated:

> Habeas Corpus Rule 2(c) is more demanding.  It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground."  See also Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)).  Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:
>> **"CAUTION: You must include in this petition <u>all</u> the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date."**
>> Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., P. 685 (2000 ed., Supp. V) (emphasis in original).
>
> A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted."  § 2243.  Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in the district court," the court must summarily dismiss the petition without ordering a responsive pleading.  If the court orders the State to file an answer, that pleading must "address the allegations in the petition." Rule 5(b).[15]

"The 'original pleading' in a habeas proceeding is the petition as initially filed."[16]  A habeas petition may be amended as provided in the rules of procedure applicable to civil

---

[14] Rules—Section 2254 Cases, Rule 2(c) (emphasis added).

[15] *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005).

[16] *Id.* at 645.

4

actions.[17]   Amendment of pleadings in civil actions is governed by Federal Rule of Civil

Procedure 15.  Normally, a pleading that has been amended in accordance with Rule 15

supersedes the pleading it modifies.[18]  Once an amended pleading is interposed, the original

pleading has no further function in the case.[19]  Thus, claims asserted in the original pleading are

normally deemed waived or abandoned if not replicated in the amended pleading.[20]  Accordingly,

this Court declines to address any ground raised by Hutcherson, other than the four grounds

raised in his amended petition; the grounds to which Respondent responded.

### III.  STANDARD OF REVIEW

Because the petition was filed after April 24, 1996, it is governed by the standard of

review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28

U.S.C. § 2254.  Consequently, this Court cannot grant relief unless the decision of the state court

"was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" at the time the state court rendered its

decision or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."[21]  The Supreme Court has explained that "clearly

---

[17] 28 U.S.C. § 2242.

[18] *See Pacific Bell Telephone Co. v. Linkline Communications, Inc.*, 556 U.S. ___, 129 S. Ct. 1109, 1122 n.4 (2009) (citing 6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Fed. Prac. & Proc. Civ. § 1746 (2d ed.)).

[19] *Laza v. Reish*, 84 F.3d 578, 581 (2d Cir. 1996) (citing 6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Fed. Prac. & Proc. Civ. § 1746 (2d ed.)).

[20] *See Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

[21] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

5

established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[22]  The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[23]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[24]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[25]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[26]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[27]  Hutcherson "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[28]

---

[22] *Williams*, 529 U.S. at 412.

[23] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[24] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

[25] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[26] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[27] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[28] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

In applying this standard, this Court reviews the last reasoned decision by the state court.[29]  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[30]

## IV.  DISCUSSION

Ground 1:  *Miranda* Violation.

At the time of, or shortly after, his arrest, Hutcherson made two statements to a police officer:  "I'm glad I got caught" and "the gun at the Red Roof Inn wasn't loaded."  Hutcherson argues that these two statements, made before he was informed of his *Miranda* rights, should have been suppressed.  After holding a *Huntley* hearing,[31] the trial court found as true the testimony of the police officer that the statements were made spontaneously, not as a result of police interrogation.[32]  On direct appeal, the Appellate Division, without discussion, accepted the trial court's finding:

> Following his arrest one year after the robbery, defendant spontaneously disclosed to a police officer that "he had screwed up and that he was glad he was caught" and further stated that the gun at the subject hotel "wasn't loaded."[33]

The privilege against self-incrimination while an individual is in custody embodied in *Miranda* is not whether he is allowed to talk with the police without the benefit of warnings and

---

[29] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[30] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[31] *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965).  The term "*Huntley* hearing" is a short-hand reference to the hearing held in New York on a challenge of the admissibility of statements made to law enforcement personnel.

[32] Docket No. 34-1, pp. 48-55.

[33] *Hutcherson*, 808 N.Y.S.2d at 814.

counsel, but whether he can be interrogated.[34]  "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."[35] In this case, the trial court found, as a factual matter, that the challenged statements were made spontaneously, not as the result of police interrogation.  Hutcherson's arguments are basically nothing more than an attack on the testimony of the police officer.  Hutcherson misperceives the role of a federal court in a federal habeas proceeding attacking a state-court conviction.  This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. The role of this Court is to simply determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain the finding of fact.[36]  In the absence of clear and convincing evidence to the contrary, this Court is bound by that factual finding.[37]  Such is the case here.

On the record before it, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[38] Hutcherson is not entitled to relief under his first ground.

Ground 2:  Ineffective Assistance of Appellate Counsel.

---

[34] *See Rhode Island v. Innis*, 446 U.S. 291, 299-302 (1980).

[35] *Miranda*, 384 U.S. at 478.

[36] *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

[37] 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340.

[38] 28 U.S.C. § 2254(d); *see Eisemann v. Herbert*, 401 F.3d 102, 110 (2d Cir. 2005); *McKinney v. Artuz*, 326 F.3d 87, 103 (2d Cir. 2003).

Hutcherson contends that appellate counsel was ineffective in failing to raise certain issues on appeal.  As a result, Hutcherson was forced to raise them himself in his own *pro se* brief and in his petition for a writ of error *coram nobis*.  Specifically, in his amended petition, Hutcherson refers to "destruction of evidence, confrontational clause, etc."  Under *Strickland,*[39] to demonstrate ineffective assistance of counsel, Hutcherson must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[40]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[41]  Hutcherson must show that his appellate counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[42]  The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[43]  "However, a petitioner may establish constitutionally inadequate performance if he shows that [appellate] counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."[44]

Hutcherson raised his ineffective assistance of appellate counsel arguments before the

---

[39] *Strickland v. Washington*, 466 U.S. 668 (1984).

[40] *Id.* at 687.

[41] *Id*.

[42] *Woodford v. Visciotti*, 537 U.S. 19, 22-23 (2002); *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[43] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective counsel to fail to raise meritless claims).

[44] *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000), quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

Appellate Division, Third Department, in his petition for a writ of error *coram nobis*.  The

Appellate Division summarily rejected Hutcherson's petition without opinion or citation to

authority.[45]  Where there is no reasoned decision of the state court addressing the ground or

grounds raised on the merits and no independent state grounds exist for not addressing those

grounds, this Court must decide the issues *de novo* on the record before it.[46]  In so doing, because

it is not clear that it did not so do, this Court assumes that the state court decided the claim on the

merits and the decision rested on federal grounds.[47]  This Court gives the assumed decision of the

state court the same AEDPA deference that it would give a reasoned decision of the state court.[48]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's
> determination" under the *Strickland* standard "was incorrect but whether that
> determination was unreasonable—a substantially higher threshold."  *Schriro,
> supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general
> standard, a state court has even more latitude to reasonably determine that a
> defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S.
> 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule
> application was unreasonable requires considering the rule's specificity.  The more
> general the rule, the more leeway courts have in reaching outcomes in case-by-
> case determinations").[49]

---

[45] Docket No. 33-25, p. 2.

[46] *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a *de novo* standard to a federal claim not reached by the state court).

[47] *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *see also Fama v. Comm'r of Correctional Svcs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).

[48] *Jimenez*, 458 F.3d at 145-46.

[49] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct.1411, 1420 (2009).

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims

under the § 2254(d)(1) standard.[50]

    1. *Destruction of Evidence*.

    Although Hutcherson does not identify the destroyed evidence in his petition, in his

Traverse Hutcherson identifies the destroyed evidence as a vehicle in the possession of the

police.  Hutcherson contends that appellate counsel, in not raising the destruction of the evidence

on direct appeal, ignored decisions of the Appellate Division, Third Department.  Hutcherson

does not identify these decisions.  The factual background, as recited in Respondent's

Memorandum of Law, is:[51]

>     Here, after petitioner's car crashed into a house in Binghamton in May
> 2000, it was seized by the police.  When the car was impounded, the police
> noticed that there was damage to the driver's side door lock and photographed the
> car (T1: 442).  The impound sheet accompanying that accompanied [sic] the car to
> private impound yard specifically stated that the car had been used in the
> commission of a crime (T1: 388).  In June 2001, unbeknownst to the police, the
> impound yard released the car for destruction (T1: 387).  The police, however, did
> not authorize the car's release (T1: 387).[52]

    In order to establish that the destruction of the evidence constitutes a constitutional

violation, Hutcherson must establish three factors.  First, Hutcherson must show that the

prosecution acted in bad faith in destroying the evidence.[53]  Second, he must show that the

---

    [50] *See Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

    [51] Because Hutcherson does not contravene this factual statement, this Court treats it as
true.  28 U.S.C. § 2248; *See Carlson v. Landon*, 342 U.S. 524, 530 (1952); *United States ex rel.
Catalano v. Shaughnessy*, 197 F.2d 65, 66 (2d Cir. 1952) (per curiam).

    [52] Docket No. 32, pp. 35-36.

    [53] *Arizona v. Youngblood*, 488 U.S. 51, 56-58 (1988).

destroyed evidence possessed apparent exculpatory value before its destruction.[54]  Third, it must appear that the evidence was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[55]  New York law is the same.[56] Hutcherson's claim fails on two of the three prongs.  First, there is no evidence that the destruction of the evidence was as a result of bad faith on the part of the police or the prosecution.  Second, as the Respondent points out, to the extent that there was damage to the driver's side door,[57] the fact that the door was photographed showing the damage to the driver's side door provided comparable evidence.  There is no reasonable probability that, had appellate counsel raised this issue on appeal, the result would have been different.

    2.  *Confrontation Claim*.

    Although it is not entirely clear, Hutcherson's confrontation claim appears to be directed at the police report of Officer Perna of the Binghamton Police Department, who was not called to testify at trial.  Hutcherson's complaint is that, notwithstanding that Officer Perna was not called to testify at trial, other officers were permitted to comment on Officer Perna's report.  The

---

[54] *See California v. Trombetta*, 467 U.S. 479, 489 (1984).

[55] *Id.*

[56] *See People v. Jardin*, 670 N.E.2d 444, 445 (N.Y. 1996) (adopting the *Trombetta* test); *People v. Alvarez*, 515 N.E.2d 898, 900 (1987) (same); *see also People v. Feliciano*, 753 N.Y.S.2d 511, 512 (N.Y.A.D.), *lv. denied*, 793 N.E.2d 417 (N.Y. 2003) (following *Youngblood*); *People v. Steele*, 287 N.Y.S.2d 685, 687 (N.Y.A.D. 2001), *lv. denied*, 764 N.E.2d 401 (N.Y. 2001), *reconsideration denied*, 767 N.E.2d 159 (N.Y. 2002) (same).

[57] Relevant and probative to Hutcherson's assertions that, at the time the vehicle was wrecked, he had reported it stolen.  This satisfies the second prong:  that the vehicle had apparent exculpatory value.

testimony in the record concerning Officer Perna's report was brought out on the cross-

examination of Officer Gregory Saroka by defense counsel.

> Q.      I just show you what's been marked as Defendant's Exhibit E and
> ask if -- just take a moment, Officer, to take a look at that -- if you can identify it
> for the jury what that appears to be.
> A.      (Witness complies).  This appears to be a City of Binghamton
> Police Department police report or incident report dated 4/3/01 completed at 5:52
> PM, Tuesday.  And it appears to be that completed by Patrolman Perna.
> Q.      I'm going to draw your attention to page two of that report and ask
> you if it refreshes your recollection that, in fact, you searched Mr. Hutcherson and
> you found the cocaine in his pocket.
> A.      That's what this report indicates, that's correct.
> Q.      But that's not correct?
> A.      It's not correct.[58]

On redirect, Officer Sakota testified:

> Q.      Just briefly, Mr. Brown was showing you a Binghamton Police
> Department report by Detective Perna.
> A.      That's Patrolman Perna, yes.
> Q.      Indicating that you recovered drugs?
> A.      That's what his report says.
> Q.      Did you recover drugs or did Detective Haven recover them and
> hand them to you?
> A.      Detective Haven searched him, recovered the drugs and handed
> them to me. That's not uncommon.
>         Normally in our investigations I am the officer that handles any
> evidence. I process it, field test it, report it and submit it.
> Q.      Okay.  And Detective Haven turned those drugs over to you
> immediately upon recovering them?
> A.      Yes, sir.[59]

The record indicates that Defendant's Exhibit E "Binghamton Police Department incident

report," although identified, was not admitted into evidence.[60]

---

[58] Docket 34-3, pp. 273-74.

[59] Docket 34-3, p. 276.

[60] Docket No. 34-3, p. 381.

13

In this case, the police report was used solely by counsel for Hutcherson in an attempt to impeach a witness.  Hutcherson's argument that this constitutes an infringement upon his Sixth Amendment right to confront witnesses against him is without merit.  "A witness's testimony against a defendant is . . . inadmissible unless the witness appears at trial, or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination."[61]  The Supreme Court expressly reiterated that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."[62]  Hutcherson cites no federal case in which an observation by a police officer recorded by the officer in an official police report, then introduced by the defendant in an effort to impeach the testimony of another police officer, violates the Confrontation Clause.  Nor has independent research by this Court discovered any such case.

This Court cannot say that the assumed decision of the Appellate Division, on the merits, was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[63] Nor, viewing the matter through the doubly-deferential lens of *Mirzayance*, can this Court find that, in reaching its assumed decision, the state court unreasonably applied the correct legal principle to the facts of the Hutcherson's case within the scope of *Andrade-Williams-Schriro*; *i.e.*, the assumed state court decision was more than incorrect or erroneous, its application of

[61] *Melendez-Diaz v. Massachusetts*, 557 U.S. __, 129 S. Ct. 2527, 2531 (2009) (citing *Crawford v. Washington*, 541 U.S. 36, 54 (2004)).

[62] *Crawford*, 541 U.S. at 59 n.9.

[63] 28 U.S.C. § 2254(d).

14

clearly established law was objectively unreasonable.  Hutcherson has failed to establish that

counsel committed any error that was so serious that counsel was not functioning as the counsel

guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by

*Strickland-Hill*.  Hutcherson is not entitled to relief under his second ground.

Ground 3:  *Brady* Violation.

Hutcherson contends that the prosecution failed to turn over evidence that was favorable

to the defense.  Specifically, Hutcherson alludes to a question that someone had been paid to

testify against Hutcherson, but that the prosecution never responded to the question.  Nowhere in

his amended petition does Hutcherson identify what favorable information it was that the

prosecution failed to provide.  In his second § 440.10 motion to set aside his conviction,

Hutcherson claimed that the prosecution paid Shakeema Briggs (Belcher) to give false testimony.

The Broome County Court rejected Hutcherson's claim, holding:

> The Court need not await a response by the People to determine these
> motions. His motion pursuant to CPL §440.10 is denied, on the ground that his
> allegations are conclusory in nature, unsupported by sworn factual allegations.
> His own affidavits sets forth only conclusions; no factual allegations are made
> which support the motion. (See, CPL §440.30[4][b].)[64]

Hutcherson "bears the burden of proving by a preponderance of the evidence that his

constitutional rights have been violated."[65]  Hutcherson has presented no additional evidence on

this point before this Court than he did the state courts.[66]  His conclusory statements, unsupported

---

[64] Docket 33-18, p. 2.

[65] *Hawkins*, 460 F.3d at 246.

[66] The affidavit of Shakeema Briggs (Belcher), dated August 9, 2009, and attached to the
Traverse, simply states the (1) she did not "buy the shirt in question" and that she "had found out
that Julius Hutcherson had slept with my cousin and I was hurt and angry."  It says nothing about
(continued...)

15

by factual affidavits, are insufficient to establish that his constitutional rights were violated.  This Court is unable to determine that the allegedly exculpatory evidence exists.  Without some basis upon which to find that the prosecution did, in fact, pay the witness to testify, or some reason to excuse the absence of such evidence, granting a writ of habeas corpus in this case would be inappropriate.[67]   Consequently, this Court cannot say that the decision of the Broome County Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[68]   Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade-Williams-Schriro*, *i.e.*, the state court's decision was more than incorrect or erroneous; its application of clearly established federal law was objectively unreasonable.[69]   Hutcherson is not entitled to relief under his third ground.

Ground 4:  Police Misconduct.

In his amended petition Hutcherson contends that the police improperly suggested to Michael Ruiz, one of the victims of the crime, that he had previously identified the wrong person as a perpetrator.  Hutcherson argues this constitutes police misconduct, specifically arguing that it effectively constituted a suggestive identification.  Within hours after the robbery of which

---

[66](...continued)
any payment for her testimony.  Traverse,  Docket No. 37, p. 36.

[67] *Hawkins*, 460 F.3d at 246 (citing *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support")).

[68] 28 U.S.C. § 2254(d).

[69] *Wiggins*, 539 U.S. at 520-21.

16

Hutcherson was convicted, the police apprehended a suspect (not Hutcherson).   At that time

Ruiz positively identified the suspect as the perpetrator of the crime.  Ruiz also testified that at

the time he identified the suspect the shoes and clothing were different and that he identified the

suspect from his eyes.[70]   Ruiz further testified that the perpetrator was wearing a hat and had a

bandana covering his face, except for his eyes.[71]  Although the three victims gave testimony

describing the perpetrator, not one of them positively identified Hutcherson as the perpetrator.

Hutcherson's claim is founded on the testimony of Ruiz during cross-examination by defense

counsel:

> Q        Okay.  I want to have your testimony straight.  Did you testify on
> direct examination that the person you observed near the overpass that you
> believed that to be the individual who robbed you?
> A        I said he was.
> Q.       Okay, but you just testified to these facts that you believed it to be
> the individual, correct?
> A        Yes, sir.
> Q.       Okay.  And you said that the individual appeared to be similar,
> correct?
> A        That's correct.
> Q.       On May 3rd you indicated as soon as I saw his eyes I knew it was
> him, right?
> A        That's correct.
> Q        You were positive?
> A        Yes, sir.
> Q        You didn't say similar in this statement, did you?
> A        No, I did not.
> Q        You didn't say I believed it to be him?
> A        No, I did not.
> Q        You positively identified that individual as the person who robbed
> you?
> A        Yes, I did.

---

[70] Docket No. 34-2, pp. 163-66, 175-76, 179.

[71] Docket No. 34-2, pp. 173, 180.

Q.     Now, let's cover this.  Did there come a point when you thought to yourself well, maybe it wasn't that person?

A     Not until afterwards until I had found out that Kathleen McNally had to return here to identify the person.  And that's when I knew or that it wasn't the person.

Q.     Why do you say that?  Someone tell you something?

A     No.

Q.     Did the police tell you they thought it was someone else?

A     When we had to come up for the grand jury testimony.

Q.     Mm-mm?

A     We were told that the person that I identified and that Jack identified was not the person that they suspected and they had this other individual.

Q.     The police told you that?

A     That's correct.  I believe it was the police.

Q     That's when you changed your mind?

MR. KORCHAK:     Objection.

THE COURT:        No, I'll take it.

Q     That's when you changed your mind?

A     I don't understand the question.

Q     Okay.  In your May 3rd statement you positively identified someone as the robber?

A     That's correct.

Q     You'd agree with me?

A     That's correct.

Q     You're telling me now when you came up to testify for grand jury the police told you that you ID'd the wrong guy?

A     That's correct.

Q     Before that time, did you feel in your mind that you ID'd the wrong person?

A     No.

Q.     It was only after they told you that?

A.     Yes.

Q     Okay, so that was their thought, not yours, right?

A.     Yes.

Q.     In fact, the person you identified that night, sir, was the individual who robbed you, to the best of your recollection?

A.     To the best of my knowledge, yes, sir.[72]

---

[72] Docket No. 34-2, pp. 176-78.

18

Hutcherson raised this issue in his petition for a writ of error *coram nobis*. As noted above, the Appellate Division summarily denied Hutcherson's petition without opinion or citation to authority.[73] Consequently, this Court must decide the issue *de novo* on the record before it,[74] assume that the state court decided the claim on the merits, the assumed decision rested on federal grounds,[75] and give the assumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[76]

Hutcherson's arguments that the actions of the police in this case constituted misconduct falls wide of the mark. Hutcherson cites no case in which any federal court has ever held that a suggestion by the police that a witness may be mistaken in the identification of a perpetrator constitutes police misconduct. Nor has independent research by this Court discovered any such authority. Even if one could find police misconduct in this case, it would not warrant granting Hutcherson relief. Hutcherson was not positively identified as the perpetrator by any witness, which negates any basis for finding a "suggestive identification." The jury was fully apprised of the fact that another person had been initially positively identified by at least one of the eyewitnesses shortly after the crime. The jury nonetheless found that Hutcherson was the perpetrator based upon circumstantial evidence, including the description of the perpetrator given by the eyewitnesses at trial. Accordingly, given the total absence of federal authority on the subject and the lack of any demonstrable prejudice, this Court cannot say that the assumed

---

[73] Docket No. 33-25, p. 2.

[74] *See Dolphy*, 552 F.3d at 239-40; *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003).

[75] *Harris*, 489 U.S. at 263; *Coleman*, 501 U.S. at 740.

[76] *Jimenez*, 458 F.3d at 145-46.

decision of the Appellate Division on the merits was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."[77]  Hutcherson is not entitled to relief under his fourth

ground.

V.  CONCLUSION AND ORDER

Hutcherson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[78]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[79]

The Clerk of the Court is to enter final judgment accordingly.

Dated: April 23, 2010

/s/ James K. Singleton, Jr.<br>
JAMES K. SINGLETON, JR.<br>
United States District Judge

---

[77] 28 U.S.C. § 2254(d); *see Eisemann v. Herbert*, 401 F.3d 102, 110 (2d Cir. 2005); *McKinney v. Artuz*, 326 F.3d 87, 103 (2d Cir. 2003).

[78] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[79] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.